CHANDLER et al. v. POMEROY et al.

(Circuit Court, D. New Jersey. June 1, 1898.)

1. TRUSTS—WILLS.
By the terms of a will certain funds were deposited in trust, the proceeds to be paid to decedent's daughters. Other funds were also placed in trust, the proceeds to go to decedent's son, and on his death the principal to go to the said daughters. The daughters and son entered into an agreement by which the proceeds from the trust funds were to be made a "joint fund," and divided equally among the beneficiaries. *Held* that, on the death of the son, the trust as to his estate terminated, and passed to the daughters, and they were not liable, under the agreement, to his estate for the principal of such fund, nor for the interest received thereon after his death.

2. REFERENCE—FINDINGS—PRESUMPTIONS.
Every presumption is in favor of the correctness of a master's decision on questions of fact.

3. COURTS—DECREE OF ORPHANS' COURT.
An alleged surcharge in the amounts received through the distribution of a trust fund under a decision of an orphans' court of a state cannot be recovered in the United States circuit court.

4. REFERENCE—REPORT—EXCEPTIONS.
On exceptions to a master's report, the court will not verify each interest calculation.

5. TRUSTS—ACCOUNTING.
On the termination of a trust, the fund, which was to be divided among a son and two daughters, was intrusted to the son by the daughters, who received payments from him from time to time. *Held* that, in an accounting under an agreement between the daughters and another beneficiary under another trust, to make the moneys from their trusts a joint trust, to be equally divided, the daughters must account for the payments secured from the son.

6. DOCUMENTARY EVIDENCE.
In an action for an accounting, bank books showing drafts drawn to the order of some of the parties are inadmissible, where it is not shown that the books are original entries, or that the entries were made by the clerk producing the books, and where it is not shown that the drafts were paid.

This was a bill for an accounting by Frank R. Chandler, trustee and executor, and another against Josephine Pomeroy and another.

C. C. Bonney and William B. Guild, for complainants.
George Baldwin Newell and S. H. Grey, for defendants.

KIRKPATRICK, District Judge. In June, 1880, George Pomeroy died, having made his last will and testament, in which, inter alia, he directed his executors to pay to the New York Life Insurance & Trust Company securities to the amount of $50,000 par value, to be held in trust for the benefit of his wife, and at her death to divide the said securities and their proceeds equally between his three younger children, Edward, Julia, and Josephine. In February, 1883, the wife of George Pomeroy died, and the securities above mentioned went into the hands of Edward. Julia and Josephine, though entitled to a share thereof, received no part of the same. George Pomeroy, in his will, also directed his executors to pay to the New York Life Insurance & Trust Company securities to the par value of $30,-000, to be by them received and held in trust to pay the interest as the same accrued to his son George P. Pomeroy during his life, and

at his death to pay and divide the said securities, or the proceeds thereof, to his three younger children, Edward, Julia, and Josephine, and the survivors of them. The issue of either of said children were to take a parent's share whenever the principal of either of said above-named funds became distributable by the death of the person entitled to the interest accruing thereon. The said will also provided that there should be deposited with the New York Life Insurance & Trust Company, from the first proceeds of the sale of real estate, the sum of $100,000, and that the same should be invested for the benefit of the two daughters, Julia and Josephine, $50,000 for each, and that the said fund should be held on the following trusts: (1) To collect and pay the interest on $50,000 to Julia during her life; (2) to collect and pay the interest on $50,000 to Josephine during her life; and at the death of either daughter to pay the $50,000 constituting the trust fund to her issue, failing which to pay said principal sum to Edward and the other daughter, and the survivor of them, with, however, the right of representation to their children. After making the foregoing provisions, the will directs as follows:

"All the rest and residue of my property and estate, real, personal, and mixed, I give, bequeath, and devise to my three younger children, Edward, Julia, and Josephine, their heirs and assigns, forever, to be divided between the said Edward, Julia, and Josephine, share and share alike."

Edward was named as one of the executors of the will. He made no accounting of the funds of the estate, and it was charged by the sisters, Julia and Josephine, that he was speculating with them, and they therefore brought a suit against him both in his individual capacity and as such executor. In March, 1887, Edward, while this suit was pending, died, and by his last will and testament gave and devised the whole of his estate, subject to a few specific legacies, amounting to about $6,500, to his brother George P. Pomeroy. In May of the same year (1887) Julia and Josephine and George P. (who then represented Edward's interest in the estate of his father, George Pomeroy) entered into an agreement for an adjustment and settlement of all the differences, and to terminate all suits then pending between Julia and Josephine and Edward, deceased. Under the terms of this agreement certain securities, etc., were surrendered by Julia and Josephine and George P., representing Edward's estate, to Frank R. Chandler, one of the complainants herein, by whom a distribution was made, whereby each of the parties to the agreement received a large amount of securities and cash. An accounting was rendered by Chandler, acting as the agent of all the parties, and was by him designated as the "Grand Statement," containing a detailed description of the collection and distribution of the estates of Edward and George Pomeroy, excepting therefrom the real estate and the trust funds in the New York Life Insurance & Trust Company, set apart for the benefit of Julia and Josephine and George P. Pomeroy. Three months after this distribution George P. Pomeroy died, leaving a will, in which Chandler, one of the complainants herein, became a contingent beneficiary. Differences arose between Julia and Josephine Pomeroy and Chandler in relation to the agreement, and this bill was filed for an accounting under it. Upon a final hearing at cir-

cuit the bill was dismissed for want of equity, but upon appeal to the supreme court this decree was reversed and the agreement held to be valid. In the opinion filed by Mr. Justice Brown (12 Sup. Ct. 410), the supreme court say:

"We do not find it necessary upon this appeal to put a construction upon this agreement. * * * These questions will arise more properly upon settlement and enforcement of the decree. It is sufficient for the purposes of this case to hold, as we do, that the settlement was a valid one, and that the defendants should be required to account under the written agreement so to be construed."

The mandate of the supreme court was handed down to the circuit court, and in January, 1894, the parties were heard, and a decree entered construing the agreement and directing an account under it to be taken before the master in accordance with the construction so put upon it by the court. The master has taken the testimony, heard the parties, and made his report, to which both parties have filed exceptions.

In so far as the report conforms to the decree and order of reference, it must be confirmed; and the court proposes at this time to consider only such matters as were reserved by the court at the time of making such decree and order of reference, and in so doing to be guided by the general principles of construction laid down therein, and give to the agreement that interpretation heretofore placed upon it by the court. A careful reading of the agreement sued upon will show that the parties thereto had in mind three separate and distinct matters, which seemed to them to require separate and distinct and different methods of treatment. First, there was the estate of George Pomeroy; second, the estate of Edward Pomeroy; and, third, the trust funds which had been created by the will of George Pomeroy. It will appear that one of the declared objects of the agreement was to settle the estates of George Pomeroy and Edward Pomeroy in such manner that the surviving children and heirs at law of said George Pomeroy might be equally charged with, and equally share in, the estate of both said George and Edward, deceased. It was recognized by the parties that these estates of George Pomeroy and Edward Pomeroy stood upon a different footing. George P. Pomeroy, being the sole beneficiary (except as to a few legacies) under the will of his brother Edward, had absolute control over that estate. Therefore it was provided that Edward's will should be disregarded in so far as it conflicted with the terms of said agreement, while the will of George Pomeroy should be disregarded only "in so far as the same might be done" by the parties to the agreement. The agreement was made to relate to the whole of Edward Pomeroy's estate, but only to the "remainder" of the estate of George Pomeroy. By this expression of "the remainder of the estate of George Pomeroy" I understand the parties to have meant that part of the estate of George Pomeroy which was included in the eighth item of his will, which provides for the disposition of the "rest and residue" of his estate. At the time the agreement was made the will of George Pomeroy had been partially executed. Four trust funds had, as directed by the will, been set

apart and placed in the hands of trustees for specific purposes, and control over them had been lost by the heirs at law, the parties to the agreement. Three of these trust funds were then in the hands of the trustees named in the will, and the persons who would be entitled to the principal thereof unknown, while the fourth had passed into the hands of Edward, and was to be considered a part of his estate, to be equally distributed. It is apparent that these were facts known and fully recognized by the parties, not only from the words of limitation of power set out in the agreement, but also from the insertion of the special clause in the contract which provided the manner in which these trust funds which did not form any part of "the remainder of the estate of George Pomeroy" should be dealt with. The estate of George Pomeroy consisted of the trust funds which he had carved out of it, and set apart for specific purposes, in a manner which gave his children no power over its disposition, and the "rest and residue" which by the eighth clause of his will he gave to his three younger children absolutely, with full authority to do with as they liked, and which, in the agreement, was called the "remainder." "In so far as they were able," the heirs at law of George Pomeroy set aside the provisions of his will, and distributed among themselves, in the way specifically set out in the agreement, first, the "remainder," and then the trust funds, the two constituting the whole estate.

As has been said, George P. Pomeroy was entitled, during his life, to the interest or income arising from the trust fund of $30,000 in securities held by his trustee, the New York Life Insurance & Trust Company; and in like manner Julia and Josephine were each entitled to receive the income from their $50,000 trust fund held by the same trustee. Over the principal of said funds none of the parties had any right of disposition, because it had been made by the will of George Pomeroy, and would be carried out by the trustee appointed thereunder; but the income was their own, to do with as they pleased. Desirous of making equal distribution of the estate of George Pomeroy, so far as they were able, and recognizing their inability to dispose of the principal of the trust funds, this clause was incorporated in the agreement in relation thereto:

"It is further covenanted and agreed that in the division of the said estate the proceeds or revenue to be derived from the trust fund for the benefit of George P. Pomeroy, Julia Pomeroy Morrison, and Josephine Pomeroy, created by the will of George Pomeroy, deceased, shall be treated as a joint fund, and divided equally between the said last three parties; and, so far as lies in our power, we, the parties hereto, covenant and agree that the said trust fund shall be considered and be the joint fund of the said last three parties."

By the will of George Pomeroy the principal of the fund had been disposed of. Neither of the contracting parties had any power or control over it, and therefore they did not undertake to exercise it. They did not, because they could not, agree to whom, upon the death of either life beneficiary, the principal should go; but they did expressly agree that as to the proceeds or revenue which had been or might be derived therefrom they would share equally. In the agreement the parties recognized the limitation of their authority, and did not seek to exceed it. Upon the death of George P. Pomeroy, his

interest in the trust fund set apart for his benefit ceased, and, by the terms of the will of George Pomeroy, Julia and Josephine received from the trustee the principal of said trust fund; but they do not, on this account, occupy any different status, so far as relates to the agreement, than if it had been paid to strangers. Julia and Josephine had made an agreement with George P. Pomeroy by which they had stipulated that they would make a "joint fund," by contributing the proceeds and revenue which they derived from their several trust funds, and divide with him equally. Upon the death of George P. Pomeroy, this "joint fund," to which each was to contribute, and which was to be divided equally, ceased to exist. There was no longer a trust fund, the proceeds or revenue of which George P. Pomeroy or his heirs could contribute to the "joint fund" which was to be divided. That trust fund had been distributed according to the terms of the will of George Pomeroy, and it is immaterial where it went. It followed the terms of the will of George Pomeroy. That trust was ended. There was no longer any trust fund, or trustee, or cestui que trust. If the principal of this fund had gone to strangers, it could not for a moment be contended that Julia and Josephine could be called upon to account for the interest which others received on the same, nor to share with the heirs of George P. Pomeroy the interest on the trust funds set apart for their benefit; and I fail to see that the fact that they were themselves the residuaries of the fund under the will of George Pomeroy casts any additional obligation upon them under the agreement.

It follows, from what has been said, that the complainants' first, second, and third exceptions, relating to the principal of the trust fund which had been set apart for the benefit of George P. Pomeroy, must be overruled, and the exception of the defendants (being the fourth) relating to the charge against them of interest received on the said trust funds after the death of George P. Pomeroy sustained.

The fourth exception of the complainants relates to specific sums with which complainants allege each of said defendants Julia and Josephine should be charged. The master has heard the testimony relating to these charges, and has decided that they should not be allowed against defendants. The items were before him, and on the evidence he has made his decision. "Every presumption is in favor of the correctness of the master's decision." Fost. Fed. Prac. p. 563. The court finds nothing in the testimony to justify a reversal of the master's finding.

The fifth exception of the complainants is also disallowed. It appears that the estate of Edward Pomeroy was duly settled by the orphans' court of the county of Morris, in the state of New Jersey. So far as Edward's estate is concerned, the terms of the agreement have been carried out. The amount distributable was ascertained, and one-third part thereof paid to Julia, Josephine, and the representative of George P. Pomeroy. If they, or either of them, received more than they were entitled to, through error or otherwise, the "surcharge" cannot be recovered in this court upon this accounting. The orphans' court of the county of Morris would seem to be the proper tribunal to which resort should be had.

In regard to the subject-matter of the sixth of complainants' exceptions, viz. the trust fund set apart for the benefit of the mother, the master's report is silent. The master has not charged either the principal or interest on the same to the defendants. On the hearing the defendants denied having received the principal or interest. They alleged, and the master, in the absence of evidence to the contrary, found, that the principal of this fund had been taken over by Edward. Under those circumstances, it, in the absence of an accounting between Edward's representatives and the defendants, no doubt formed a part of his estate, which was divided equally between the parties.

The seventh exception of the complainants is so vague and uncertain that it is impossible for the court to determine the same. It is not framed in accordance with the rules of the court, requiring the exception to be specific, and the exceptant to specify why it is made, and the grounds upon which it rests. I notice from complainants' brief that some of the items intended to be included in the exception relate to erroneous calculations of interest. It can hardly be expected that the court should, on exceptions to a master's report, verify each and every interest calculation. Should it be necessary to refer back this report to the master for any purpose, his attention may be called to the calculations of interest alleged to be erroneous, and he be directed to rectify any mistakes.

The first and second exceptions of the defendants will be disallowed. It appears that they had intrusted the whole, or a large part, of their distributive share of the estate of their father, George Pomeroy, to the care of their brother Edward, and that he retained the whole of the principal and part of the interest. Whatever sums he paid to his sisters were on account of the amounts which he had received from their share of the estate of George Pomeroy. If Julia and Josephine had retained the securities which they received from the estate of George Pomeroy, and received the interest thereon, they must, under the agreement, have accounted for both. They are in no different position because they intrusted the fund to Edward. Whatever Edward actually paid them should be accounted for, and inasmuch as there is no denial of the actual receipt of the money, even though the receipts run to Edward individually, they were properly charged against them in the account by the master. The payment made the sisters by Edward represented, in part, at least, the income from the securities of the estate of George Pomeroy which they had placed in his hands, and they should be charged with the amounts received from Edward, acting as their agent, as if they had retained the securities and received it directly. These exceptions will be overruled.

The only remaining exception, being the eighth of complainants', and which relates to the partition of the real estate, is withdrawn, and needs no consideration. The partition has been effected in the courts of the several states in which it was located.

It only remains to notice the request that additional charges be made against the defendants for money said to have been received by them, represented by certain letters of credit which appear by

the books of King's Sons, of New York, to have been drawn to the order of Julia and Josephine, and payable by Messrs. Hottinguer & Co. of Paris. The books of the New York bankers were produced by a clerk. It was not shown that they were books of original entries, or that the entries were made by the clerk who produced the books. It was not made to appear whether the drafts had been paid, nor whether, if paid, the money was used for the benefit of the payees. The books of King's Sons were not in any way books of account of transactions between them and the parties sought to be charged by the entries. Books of account are prima facie evidence only between the parties, and to a limited extent. The general rule is that a man cannot put in evidence his own written memoranda, and the exceptions are when they are necessary to show the sale and price of personal property in the usual course of business, and for work and labor done, with the sums due for the same. Oberg v. Breen, 50 N. J. Law, 145, 12 Atl. 203. If it be true that the drafts were issued as shown by the entries on the books, that would not establish the fact that the moneys were received or paid as a part of the income of the estate of George Pomeroy. The master would not have been justified in presuming that more money was paid to Julia and Josephine by Edward than the proofs showed, nor will the court presume that the master has erred in his finding of fact without testimony which would clearly justify it in coming to that conclusion.

Let a decree be drawn in accordance with these views.